## No. 11,933.

### STATE OF LOUISIANA VS. MAXILLE B. FONTENOT.

There was nothing illegal in the appointment of the attorney to represent the State, under the statute of 1886. The signature to the indictment as acting "District Attorney" was not an irregularity vitiating the indictment.

A witness having been impeached by evidence of declarations inconsistent with his testimony, can be corroborated by evidence of other declarations corresponding with his testimony made prior to impeaching statement.

The dangerous character of a third person, present at the homicide, who made no demonstration against the deceased, and had had no difficulty with him, is not admissible in evidence.

As a general rule the questions put to a witness must call for his knowledge of some fact; they must not, save in special cases, be framed to elicit the impressions or opinions of a witness.

It is not error on the part of the court to refuse to give an instruction which had already, in substance, been given in the general charge to the jury.

APPEAL from the Eleventh Judicial District Court for the Parish of St. Landry.  *Perrault, J.*

*M. J. Cunningham*, Attorney General and *E. B. Dubuisson*, District Attorney, for Plaintiff, Appellee.

---

*John N. Ogden* and *E. P. Veazie*, for Defendant, Appellant.

---

Submitted on briefs January 11, 1896.
Opinion handed down January 20, 1896.

---

The opinion of the court was delivered by

BREAUX, J.   The defendant was indicted for murder and was convicted of manslaughter.   From the sentence and judgment of this court, he prosecutes this appeal.   His counsel argues the grounds set forth in one of the bills of exceptions; the other bills of exceptions are submitted on their merit, without argument.   There was also filed a motion to quash, on the ground that the indictment does not set forth that the District Attorney was sick, absent, or from any other cause could not act, and further, that the attorney who represented the State by appointment of the court was not " acting District Attorney," and that he was not authorized to sign the indictment in that capacity.   This motion to quash was filed on a previous trial, which resulted in a mistrial, owing the the jury's failure to agree.

On the second trial the record does not disclose that anything was said in the District Court about the demurrer, and here no mention was made of the ground it sets forth.

### THE APPOINTMENT OF AN ATTORNEY TO REPRESENT THE STATE.

The court had the authority to appoint an attorney to represent the State for any of the causes provided by the statute.   The record does not inform us that an appointment was made illegally and without necessity.   Here the principle applies that all things are presumed legitimately done, until the contrary be proved.   The second ground is equally as untenable.   He was, in fact, acting District Attorney by appointment of the court, and the indictment was legal without any additional statement, such as " by appointment of the court," or words to that effect.

STATEMENT PRECEDING IMPEACHING STATEMENT ADMISSIBLE.

The only objection argued by defendant's counsel, as we have already stated, is that a witness was directed to relate a previous unsworn statement of the facts to the jury. Bill No. 1. The statement of the trial judge copied in the bill is: That it was pertinent to inquire how the witness related the facts of the homicide to said Edmund Belaire Fontenot, because counsel for defendant by cross-examination of the witness sought to show that he had made contradictory statements to other persons in relation to the facts of the killing, for the purpose of impeaching him. The practice on this subject is not always similar in the different jurisdictions. Corroborative evidence was admitted in Massachusetts Commonwealth vs. Bosworth, 22 Pick. 397, also in Pennsylvania and in some other States. 1 Sargent & Rawle, 536; 10 *Ibid.* 322; Coffin vs. Anderson, 4 Blackf. 398, 399. There are well-considered cases against the admissibility of such testimony, particularly when not restricted as to the time of the statement. We think that, where evidence has been offered tending to show bias, imprope motive or recent fabrication on the part of a witness, statements accounting for the testimony given, made prior to the contradiction proved on the other side, is admissible. Thompson on Trials, Vol. 1, par. 579.

Although the facts of this case, as we interpret them, do not render it necessary to pass upon the question of the admissibility of such statements made subsequent to the asserted contradiction (the purpose of law being to prevent admitting subsequent self-serving statements), we are of the opinion that a witness having been impeached by evidence of declarations inconsistent with his testimony can not be corroborated by statements made *subsequent* to the contradictive statement, but this, under the facts, does not apply here. The defendant opposed the admission of the testimony without reference to dates, on the broad ground that it was not at all admissible. The bills of exceptions, as we understand them, were taken to reserve points to sustain that view. Under the circumstances of this case the evidence was properly admitted.

A decision of a properly constituted court upon a subject within its jurisdiction is *primà facie* correct and legal. It was incumbent upon the defendant to obtain a ruling to distinguish between attempted corroboration prior, or subsequent, to the alleged contradictory statements by inserting in the bill of exception, whether the

State vs. Fontenot.

alleged corroborative statement was *prior* or *subsequent* to the contradictory statements.

As to statements made *prior* to the contradictory statements, it has been decided that they should be admitted only in support of the credit of a witness, and is not to be heard except in reply to some matter on the other side going to impeach him. It seems in this case, as we have already stated, that the attempt to impeach was not only made, but was unusually energetic.

Under well considered authority it has been held as proper for the trial judge *ex proprio motu* (and imperative when requested by a defendant) to instruct the jury that such evidence is admitted in support of the attempt made to place the testimony of the witness upon the same level as it would have been had no attempt been made to impeach him, but that it is not to be taken as substantive evidence.

FOUNDATION NOT LAID TO ADMIT EVIDENCE OF DANGEROUS CHARACTER OF A THIRD PERSON PRESENT AT THE HOMICIDE.

Bill of exception numbered two was taken to the judge's ruling, excluding testimony offered to prove the dangerous character of a third person who was present at the homicide and to show the motive this third person had to commit the act with which the defendant was charged. The defendant failed, the trial judge states, to show the asserted motive, and produced no evidence of an overt act or hostile demonstration on the part of this third person toward the accused.

Under this state of facts the testimony was properly excluded. The mere statement of the points sustained the ruling.

If there was a bill of exceptions No. 3 it is not of record. Presumably there was no such bill, and bill four followed two in the trial court.

COURTS IN THE EXERCISE OF SOUND DISCRETION CAN DIRECT AND LIMIT THE EXTENT TO WHICH A WITNESS SHOULD BE EXAMINED.

The fifth bill of exception was taken to the refusal by the court to allow the defendant to propound the question: " Would you believe your own brother under oath as a witness in this case for the defendant? "

Counsel claimed that the answer sought would discredit the witness by showing prejudice against the accused.

It was excluded by the court, because it sought to elicit the opinion of the witness and " because the court thought that the cross-examination had gone far enough in the direction indicated by the question, and that it was time to put a stop to it." As we understand the question it was not pertinent to the issue and was for reasons stated by the trial judge properly excluded.

### QUESTION WHICH WOULD HAVE ELICITED THE OPINION OF A WITNESS PROPERLY EXCLUDED.

Bills number six and seven were taken to the refusal of the judge to allow the defendant to propound the question: " Did you not learn that Louis Deville was making at different times contradictory statements about the matter of the killing of the deceased?" The two bills do not differ materially and are therefore passed upon together. The judge states that he informed the accused that he could ask the witness if he knew of the witness making contradictory statements.

The trial judge understood that the purpose was to elicit hearsay testimony, and, in consequence, his suggestion should have been followed. There was no prejudicial error in the ruling. Owing to some confusion in numbering, it seems that there is no bill of exception eight.

### IF ANSWER BE RESPONSIVE TO QUESTION, DEFENDANT HAD NO CAUSE TO COMPLAIN.

As to bill nine, it was taken to the refusal of the judge to instruct the jury to disregard an answer of a witness, who was being examined. The question which elicited the answer was not copied in the bill. The trial judge informs us by his endorsement that the answer was responsive.

In the absence of the question by defendant's counsel, the statement of the trial judge disposes of the objection.

### THE STATEMENT HEARD WAS IN ITSELF COMPLETE, AND THEREFORE ADMISSIBLE IN EVIDENCE.

Bill 10 was taken to the admission of a conversation, heard by the witness, between the accused and one who was his friend. The objection was that the witness could not state the whole conversation, as he had only heard a part of the conversation.

The trial judge said, a's part of the bill, that the witness stated "that a bosom friend of the accused said to the accused, as they were passing witness: 'If they accuse you of this murder, they must be able to prove it,' and that witness did not hear, nor any one else, that anything else was said before or after this conversation."

As the conversation heard was complete in itself, as shown by the endorsement of the trial judge, it was admissible evidence.

QUESTION PROPERLY LEFT TO THE JURY TO DECIDE.

Bill 11 relates to the judge's refusal to let a witness for defendant testify whether the witness for the State, who testified as stated in the bill just passed upon by us, was near enough at the time to hear the conversation, as he had sworn. The endorsement is that this witness for defendant had previously stated that he was about ten steps from the accused and his friend at the time of the asserted conversation, and that he had not heard it. · The trial judge adds: This witness having stated the distance and relative position of the two persons conversing, the jury was in possession of all facts needful to determine whether or not the State witness sought to be impeached was near enough to hear the conversation. The facts being before the jury, the trial judge properly left it to the jury to determine whether or not the State witness could have heard the conversation.

THE REQUESTED INSTRUCTION WAS GIVEN IN THE GENERAL CHARGE TO THE JURY.

The last bill of exceptions was taken to an asserted refusal of the trial judge to charge the jury, as requested, as to threats and motive. The reason for the refusal was that he had already given the instruction requested in his general charge. The substance of the general charge on this point was incorporated in the bill. It sustains the judge's statement that the requested instruction had already been given.

This completes the review of the objections before us on appeal, and we find no ground upon which the accused can be relieved.

Judgment affirmed.